IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

GREAT NORTHERN INSURANCE  )
COMPANY,                   )
                           )
          Plaintiff,       )  Case No. 12-CV-25-JED-FHM
v.                         )
                           )
JOHN WATSON LANDSCAPE      )
ILLUMINATION, INCORPORATED,)
                           )
          Defendant.       )

## OPINION AND ORDER

Before the Court are two motions by the defendant, John Watson Landscape Illumination, Inc. (JWLI) to exclude the testimony of Tony Perryman, an engineer and journeyman electrician who is designated as an expert witness for the plaintiff, Great Northern Insurance Company (Great Northern). (Doc. 91, 124). In the first motion, JWLI argues that Perryman's proposed testimony on certain topics is irrelevant and should be excluded. (Doc. 91).[1] In the second motion, JWLI argues that Perryman should be stricken as an expert because he submitted an affidavit in response to summary judgment and limine motions in which he "reformulated his expert analysis and re[wrote] his expert opinions." (Doc. 124).

---

[1] JWLI primarily argues that Perryman's testimony should be excluded as irrelevant under the principles of *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the [expert] has applied the principles and methods reliably to the facts of the case.'" *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702). Among other things, in fulfilling its obligations under *Daubert*, a trial court must inquire into "whether [the] proposed testimony is sufficiently 'relevant to the task at hand.'" *Bitler v. A.O. Smith. Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004) (quoting *Daubert*, 509 U.S. at 597). "The Supreme Court has described the consideration of relevant evidence as one of 'fit,'' and "[a] trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.*

**A.      JWLI's motion to exclude certain opinions as irrelevant and unreliable (Doc. 91)**

JWLI requests that the Court enter an order precluding Perryman from testifying on the five topics discussed below, based on JWLI's argument that such testimony would be irrelevant and unreliable.

**1.      JWLI's duty and the applicable standard of care**

JWLI claims that it did not perform electrical work at the Hartman home and did not hold itself out as providing electrical work and therefore testimony of a licensed engineer and electrician is irrelevant to the standard of care that should be applied to JWLI. (Doc. 91 at 6). In response, Great Northern asserts that Perryman will offer professional opinions that, had JWLI properly evaluated the electrical system or properly performed work in connection with tripping of the circuit breaker connecting the outdoor lighting to the Hartman home, there would not have been a fire that destroyed the home. (Doc. 114 at 4 et seq.).

According to JWLI, it did not employ any electricians and therefore the standard of care applicable to an electrician is not applicable to JWLI and Perryman should not be permitted to offer an opinion that relates to the standard of care. As noted in the Court's Opinion and Order denying summary judgment (Doc. 155), there is evidence that JWLI agreed in 2008 to "evaluate electrical system," which Great Northern alleged was not done properly or at all. There is also evidence that JWLI performed work which may be considered electrical work or work that would require specialized electrical knowledge. As a result, the Court determined that there remain disputed fact issues on Great Northern's claims. The Court has reviewed the expert report of Mr. Perryman, and it appears that expert testimony will be of assistance to the jury in deciding the issues in this case.

Under Oklahoma negligence law, the "standard of conduct is that of a reasonably prudent person under the same or similar circumstances." *Mansfield v. Circle K. Corp.*, 877 P.2d 1130, 1132 (Okla. 1994). "Negligence comprehends lack of that care which is required in a situational setting – a failure to do what a person of ordinary prudence would have done or would not have done under the circumstances." *Salazar v. City of Okla. City*, 976 P.2d 1056, 1064 (Okla. 1999). Whether conduct satisfied or breached the standard of care in a specific scenario is generally an issue for the jury. *See id.* Moreover, under Oklahoma law, there is "implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner," the breach of which is a breach of contract and a tort. *Keel v. Titan*, 639 P.2d 1228, 1231-32 (Okla. 1981). The applicable standard of care in such situations is that degree of skill, efficiency, and knowledge "possessed by those of ordinary skill, competency, and standing in the particular trade or business ... or ... 'such care and skill as a reasonably competent and skillful person should have exercised in the performance of his contractual obligation.'" *Id.*

Although JWLI is not a licensed electrical contractor, its contractual agreement to "evaluate electrical system" and its actual undertaking of work that may be considered electrical in nature are directly relevant to the applicable standard of care under the circumstances. *See id.*; *Woods Petro. Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023, 1030 (Okla. Civ. App. 1983) (there exists a common law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness); *see also* Restatement (Second) Torts, § 299A ("Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade"; *but where a person represents "that he has superior skill or knowledge, beyond that common to his profession or trade[,] ... he incurs*

3

*an obligation to the person to whom he makes such a representation, to have, and to exercise, the skill and knowledge which he represents himself to have.*") (emphasis added).

JWLI's argument – that it had no obligation to evaluate the electrical system supplying electricity from the Hartman home to the JWLI outdoor lighting or to determine why the breaker for the outdoor lighting tripped – is principally hinged upon its assertions that it did not perform electrical work and did not agree to do electrical work. As noted, the Court has determined that there are genuine disputes of material fact with respect to what obligations JWLI undertook in its Guaranteed Maintenance Agreement and accompanying Five Point Evaluation and in the work it actually performed when its employees reset the circuit breaker and left the Hartman home without notifying the Hartmans that there may be an electrical problem. (*See* Doc. 155). Great Northern will be permitted to introduce evidence relevant to those issues, and expert testimony as to what constitutes electrical work, and whether JWLI's conduct or omissions resulted in the fire, will help the jury understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702. Perryman's expert report (Doc. 91-1) provides a very detailed analysis of the wiring of the system, a description of the basis for his opinions, and he was deposed at length on his report, opinions, and the bases therefore (Doc. 91-2).

The Court thus declines at this time to exclude or limit Perryman's testimony regarding whether JWLI performed electrical work and his opinion as to whether JWLI's acts or omissions caused the fire. Any weaknesses may be exposed upon cross-examination.

### 2. Whether JWLI breached a contract with the Hartmans

The Court has determined that the Guaranteed Maintenance Agreement is ambiguous as to the meaning of "evaluate electrical system" in that the phrase is capable of two possible meanings. (*See* Doc. 155 at 10-11). JWLI argues that the intended meaning of that term will not

be aided by expert opinion, in that it is the contracting parties' intent, not an expert's opinion, which is of import in construing the contract. The Court agrees with JWLI that Perryman should not testify as to any opinion that JWLI "breached" the contract. But it does not appear that Perryman proposes to testify as to what the parties intended by that term of the contract or that it was "breached." Rather, from his report and deposition testimony, it appears that he proposes to testify as to what a proper evaluation of the entire electrical system would entail and that such an evaluation would constitute electrical work and would require the services of an electrician. (*See* Doc. 91-1 at 4, ¶ 15; Doc. 91-2 at 21, 24 [Depo. pp. 150, 154]).

Perryman's expert opinion as an engineering expert with electrical experience will assist the jury in determining what an evaluation of the entire electrical system would entail, if the jury were to find that the contract term required such an evaluation. He may rely upon an underlying factual assumption that the jury ultimately finds to be inaccurate, and JWLI may make that point clear through its cross-examination of Perryman. *See, e.g.*, *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980) (the expert evidentiary rules place the "full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination"); *Robinson v. Missouri Pacific R. Co.*, 16 F.3d 1083 (10th Cir. 1994) (burden is on opposing counsel through cross-examination to explore and expose weaknesses in the underpinnings of the expert's opinion); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1524 (10th Cir. 1984) (expert's assumptions are the proper subject of cross-examination). Moreover, any potential confusion of the jury will be eliminated by instructions delineating the jury's and expert's roles. The parties may propose any special instructions that they request the Court to give to the jury on this, or any other, issue.

### 3. Whether JWLI violated Oklahoma Construction Industries Board regulations or the National Electric Code

JWLI argues that Perryman should be prohibited from testifying that JWLI violated the Oklahoma Construction Industries Board (OCIB) regulations and/or the National Electric Code (NEC). According to JWLI, Perryman did not form his own opinions with respect to such alleged violations, but merely adopted the hearsay opinions expressed by John Staires, the Chief Electrical Inspector for the City of Tulsa, during communications with Perryman. (Doc. 91 at 8-9, 17).

In his deposition, Perryman was asked to define electrical work, and he responded that "[e]lectrical work is going to be electrical wiring, troubleshooting, in this case connection of landscape lighting, troubleshooting of tripped circuit breakers. That's going to be considered electrical work." (Doc. 91-2 at 4 [Depo. p. 117]). He was then asked where he found the definition of electrical work, and he located in his file his copy of the OCIB regulations, which include a regulation with definitions. (*See id.* at 5 [Depo. p. 118]). The regulations provide, in part, that "'[e]lectrical work' means work on 'electrical facilities' as that term is defined in 59 O.S. § 1682." *Okla. Admin. Code* 158:40-1-2. Perryman acknowledged in his testimony that he did not look at the statutory definition of "electrical facilities" in Title 59 of the Oklahoma Statutes, but he also testified that he looked at the administrative provision which referenced it and which he had in his file. (*See* Doc. 91-2 at 5 [Depo. p. 118] ["What I did is I read this...."]; *id.* at 9-10 [Depo. pp. 122-123] ["I looked at the Oklahoma Construction Industries Board paper"]). On its face, that provision also contains a definition of "[e]lectrical facility" which is very similar to, and consistent with, the definition of "electrical facilities" in Title 59 of the Oklahoma Statutes. *Compare Okla. Admin. Code* 158:40-1-2 ("'Electrical facility' means wiring, fixtures, appurtenances and appliances used for and in connection with a supply of

6

electricity, but excludes the connection with a power meter or other supply source") *with Okla. Stat.* tit. 59, § 1682(6) ("'Electrical facilities' means all wiring, fixtures, appurtenances, and appliances for, and in connection with, a supply of electricity within or adjacent to any building, structure or conveyance on the premises but not including the connection with a power supply meter or other power supply source"). In addition, Perryman's initial answer regarding what he understands electrical work to be was consistent with these definitions, and JWLI has not argued to the contrary.

In addition to relying upon and citing the regulations, Perryman also relied upon a conversation with John Staires, who was the Electrical Inspections Supervisor for the City of Tulsa. (Doc. 91-1 at 8). Perryman justified his reliance upon the conversation with Staires as the ultimate "authority having jurisdiction" [2] on electrical matters as defined in the NEC, and Perryman asserts that the conversation with Staires provided confirmation of Perryman's interpretation of the OCIB regulations. (Doc. 91-2 at 9 [Depo. p. 122]; *see* Doc. 114-1 at 7).

JWLI argues that Perryman's testimony that JLWI performed electrical work should be excluded because he relied upon his conversation with Staires. Rule 703 of the Federal Rules of Evidence provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

---

[2] Section 90.4 of the NEC references "governmental bodies that exercise legal jurisdiction over electrical installations..." and indicates that the "authority having jurisdiction for enforcement of the Code has the responsibility for making interpretations of the rules, for deciding upon the approval of equipment and materials, and for granting the special permission contemplated in a number of the rules."

Fed. R. Evid. 703. Under Rule 703, experts may rely upon hearsay conversations if such conversations are of a type reasonably relied upon by experts in the same field. *See id*; *see also United States v. Affleck*, 776 F.2d 1451, 1457 (10th Cir. 1985). As the Tenth Circuit noted in *Affleck*, "in practice experts commonly seek the statements and perceptions of others when forming their ultimate opinions.... The additional information from others provides the expert a broader base of data upon which he will rest his eventual conclusion." 776 F.2d at 1457 (citing Advisory Comm. Notes to Fed. R. Evid. 703). If such hearsay information is admitted, it should not be considered for the truth of the matter asserted. *Id.*

The information Perryman obtained by hearsay from Staires, who was the Electrical Inspections Supervisor for the City of Tulsa, the "authority having jurisdiction" to interpret NEC rules, appears to be the type of information that "experts in the particular field would reasonably rely on ... in forming an opinion on the subject," and Perryman therefore permissibly relied upon that information under Fed. R. Evid. 703. The underlying information need not be admissible in order for Perryman's opinion relying upon it to be admitted. Fed. R. Evid. 703.

However, the information obtained from Staires, including Staires' statements, are hearsay and the "proponent of the opinion [here, Great Northern and its expert] may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* Great Northern has not established that the probative value of Staires' statements in assisting the jury to evaluate Perryman's opinions will substantially outweigh the prejudicial effect of admitting Staires' hearsay statements. Accordingly, Perryman's opinion that JWLI performed electrical work will be admitted, but

Great Northern and its expert, Perryman, shall not disclose any hearsay statements or information obtained from Staires to the jury.[3]

However, Perryman's opinion that the performance of such electrical work *violated licensing requirements of the OCIB regulations or the NEC* is irrelevant to any material issue unless the alleged violation of those licensing requirements somehow caused the fire losses at the Hartman home. The only JWLI conduct that has been identified as a potential cause of the fire involves JWLI's alleged failure to "evaluate electrical system" and its resetting the tripping breaker to on, and leaving it on, without investigating the reason the breaker was tripping or informing the Hartmans of a potential electrical problem. Neither Great Northern nor Perryman has explained how the violation of the NEC or OCIB licensing regulations caused the fire, and the Court finds that Perryman's opinions as to the alleged violations are therefore irrelevant and will not be admitted because those opinions do "not have sufficient bearing on the issue at hand" to be a relevant "fit," and would thus not advance the purpose of aiding the jury as required by Fed. R. Evid. 702 and *Daubert*. *See Bitler*, 400 F.3d at 1234.

4. **Alleged errors in JWLI's initial installation of landscape lights**

JWLI argues that Perryman should not be permitted to testify as to his opinions that JWLI made errors in the initial installation of lighting in 2005, because it is undisputed that the initial installation of lights did not cause the fire. In response, Great Northern contends that reference to the work done from the initial installation by JWLI up to the fire in 2010 is relevant

---

[3] Because Rule 703 prohibits only the "proponent" of the inadmissible evidence from disclosing the inadmissible evidence to the jury, this ruling does not prohibit JWLI from cross-examining Perryman regarding his reliance upon Staires. Moreover, to the extent that JWLI's cross-examination opens the door in its cross-examination of Perryman, the Court will give the jury an instruction regarding the limited use of the information from Staires. *See Affleck*, 776 F.2d at 1458 (referencing a limiting instruction as to hearsay relied upon by testifying expert).

to the issue of whether JWLI performed electrical work, which JWLI has placed in issue by denying it ever undertook or agreed to perform electrical work.

Perryman's specific criticisms of the initial installation work in 2005 are irrelevant and inadmissible under Fed. R. Evid. 402, because it is undisputed that those alleged errors in installation did not cause the fire. Any probative value of testimony regarding initial installation errors is substantially outweighed by the danger that it may confuse the jury with respect to what conduct is relevant to determining whether JWLI breached its obligations and whether such breaches caused the damage claimed in this case. That testimony will hence be excluded under Fed. R. Evid. 403.

### 5. Whether JWLI violated its own policies and procedures

In his report, Perryman propounds an opinion that "[w]hen Mr. Victor Torres and Ramon Torres left the circuit breaker on and did not tell the Hartman's [sic] about the tripped circuit breaker, it was a violation of the [JWLI] policies and procedures as stated by Mr. [John] Shannon Watson." (Doc. 91-1 at 4, ¶ 16). JWLI argues that the opinion is not admissible because it is not dependent upon any scientific, technical, or specialized knowledge, but only upon the testimony of other witnesses, and the jury does not need expert testimony to assist in determining those facts or related issues. The Court agrees. Perryman acknowledged in his deposition that a determination that JWLI employees violated JWLI's own policies is not dependent upon specialized knowledge or experience:

> Q. You describe that, quote, It was a violation of the [JWLI] policies and procedures as stated by Mr. Shannon Watson, end quote. Am I correct that this opinion is based solely on the testimony by deposition of Shannon Watson?
>
> A. Yes....

> Q. ... You don't need to be an engineer to read Shannon's testimony about it and make an interpretation of it, do you?
>
> A. No. You can read his deposition and he states that they are not to leave – if a circuit breaker trips, they are to leave it off, not turn it back on.
>
> Q. Right. So that particular opinion, number 16, is not based on any particular scientific basis or knowledge. It's based strictly on your reading an interpretation of his testimony. Correct?
>
> A. Yes.

(Doc. 91-2 at 2-3 [Depo. pp. 114-115]).

Because the jury is fully capable of determining whether JWLI's own policy was violated based solely upon fact witness testimony, without any assistance from an expert, JWLI's motion to exclude Perryman's opinion that JWLI employees violated a JWLI policy is granted and that opinion will not be admitted. *See* Fed. R. Evid. 702; *United States v. Garcia*, 994 F.2d 1499, 1506 (10th Cir. 1993) (where specialized knowledge is not required to make a fact determination, expert testimony is inadmissible under Rule 702). However, in rendering his opinion that the JWLI employees caused or contributed to the fire by their actions and omissions in dealing with the tripped breaker (*see* Doc. 91-2 at 20-22 [Depo. pp. 149-151]; Doc. 127-6 at 30 [Depo. p. 165]), Perryman may properly rely upon those employees' testimony as underlying facts as to which his opinion is based.

**B.     JWLI's Motion to Strike (Doc. 124)**

In response to JWLI's summary judgment and limine motions, Great Northern submitted a new affidavit signed by Perryman, as well as his expert report and deposition excerpts. (Doc. 115-13; Doc. 114-1). Pursuant to Fed. R. Civ. P. 37(c)(1), JWLI moves to strike the trial testimony and bar the appearance of Perryman altogether, arguing that Perryman "conveniently reformulated his expert analysis and re[wrote] his expert opinions" by submission of that

affidavit, which JWLI asserts was a "deliberate and calculated circumvention of Fed. R. Civ. P. 26." (Doc. 124 at 1). While JWLI's motion is premised upon an alleged reformulation of Perryman's opinions, several pages of JWLI's motion to strike are dedicated to regurgitating arguments it made in its initial motion to limit Perryman's testimony, specifically, that Perryman's opinion is improperly premised upon John Staires' hearsay statements. (*See* Doc. 124 at 3-7). The Court addressed that argument in dealing with the first motion and concluded that Perryman's reliance upon the information obtained from his discussion with Staires does not render Perryman's opinion that JWLI performed electrical work inadmissible under Fed. R. Evid. 703. The Court will not retread that ground and will instead address only the alleged "new" or "reformulated" opinions which JWLI asserts are found in Perryman's affidavit.

A party must disclose the identity of its expert witness, and the expert must provide a written report that discloses "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). The party must timely supplement or correct its disclosure if the party learns that the disclosure is materially incomplete or incorrect, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A). With respect to expert disclosures, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition [and] [a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In applying Rule 37(c)(1), the Court is not required to "make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," but "the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

JWLI first asserts that Perryman "changed his testimony" by submission of the affidavit, because he stated in his report and testified in his deposition that he relied upon his conversation with Mr. Staires as to what constituted "electrical work," but asserted in the affidavit that Perryman himself "analyzed" whether JWLI's actions constituted "electrical work." (*Id.* at 8, citing Doc. 124-3 at 4, in which Perryman stated that he analyzed whether JWLI did electrical work, and reviewed and relied upon the OCIB regulations and the NEC in making that determination). JWLI asserts that Perryman was clear in his deposition that he did not look at or know the definition of "electrical work" and relied only upon Mr. Staires to tell him what constituted electrical work.

The Court has reviewed Perryman's report and all of Perryman's deposition testimony that the parties provided with the briefing. Perryman's report and deposition testimony do not establish that Perryman relied only upon the information provided by Staires. In his deposition testimony, Perryman provided a description of what constitutes "electrical work." The OCIB regulations, which contain the definition of "electrical work" and "electrical facilities," were

referenced in and attached to Perryman's Rule 26 report, so there is no question as to whether those regulations and definitions, and Perryman's consideration of and reliance upon them, were timely disclosed.

In response to deposition questioning about the basis for his determination that JWLI performed electrical work, Perryman first located the OCIB regulation defining electrical work (which was an attachment to his report). While that regulation cross-references a statutory definition of "electrical facilities," the same regulation contains a consistent definition of "electrical facility." Perryman admitted that he did not look at the definition in the statute, but he testified that he looked at the OCIB regulation. For example, in a portion of the deposition which JWLI omitted from its very lengthy quotation from Perryman's deposition (*see* Doc. 124 at 5-6), Perryman testified as follows:

> Q. I think we're communicating. You seem to be trying to impress me with how reliable those sources are. I'm not asking you that. *I'm asking you to confirm now that you didn't look at the definition you cited. Correct?*
>
> A. *Incorrect.*

(Doc. 124-2 at 7-8 [Depo. pp. 122-123]) (emphasis added). His testimony continued:

> Q. You didn't look at the definition of electrical work as provided in the Oklahoma Construction Industries Board which you cited, did you?
>
> A. I looked at the Oklahoma Construction Industries Board paper. No, sir, I did not read [*Okla. Stat.* tit. 59, § 1682] - -

(*Id.*). Perryman's report and deposition may be fairly read to indicate that Perryman considered the definitions in the OCIB regulations, but did not consider the statutory definition. Accordingly, the Court does not agree with JWLI's contention that it is clear Perryman previously indicated he relied only upon Staires to tell him what was electrical work. Although Perryman testified about his communication with Staires, he also testified, at length, regarding

14

his opinion and analysis with respect to what constituted permanent electrical connections made by JWLI and the basis for his own analysis and opinions. (*See* Doc. 127-6).[4]

JWLI also argues that Perryman should be barred from testifying because Perryman's affidavit discloses, for the first time, that he also contacted Staires to confirm that the City of Tulsa had not granted any NEC waiver to JWLI. (Doc. 124). That statement in Perryman's affidavit was not previously disclosed. The requirement in Rule 26(a)(2)(B) that an expert's report include "facts or data considered by the [expert] in forming [his opinions]" is intended to be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Advisory Comm. Notes to 2010 Amendments to Fed. R. Civ. P. 26(a)(2)(B). That Staires informed Perryman that JWLI had not received any waiver from NEC requirements was not previously disclosed in Perryman's expert report or his deposition. To the extent that Perryman considered that fact in arriving at his opinions, it should have been disclosed prior to the discovery and motions deadlines in this case. Given that it was not, Perryman is not permitted to use that information to bolster his opinions at

---

[4] During his deposition, Perryman attempted to expand upon the basis for his understanding and opinion regarding "electrical work," but was interrupted. For example, after locating his copy of the OCIB regulation defining "electrical work" (which also contains a definition of "electrical facility" separate from the statute), the following exchange occurred:

> Q. Did you look at [the Oklahoma statute]?
> A. No, sir. What I did is I read this [referring to the OCIB regulation] and I contacted - -
> Q. I'm getting to that, but right now my question is, did you look at the definition of [*Okla. Stat.* tit. 59, §1682]?
> A. No, sir.
> Q. So you don't know what the definition of electrical work is in the provision you've cited, do you?
> A. I know what the def - - I know what - -
> Q. I didn't ask you that....

(Doc. 124-2 at 3-4 [Depo. pp. 118-119]).

trial unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Great Northern has not provided any information establishing that the failure to disclose that fact in the report or in the deposition was "substantially justified" or "harmless." Accordingly, Perryman will not be permitted to use that information to bolster his opinions at trial. *See id.*[5]

JWLI also asserts that, in his affidavit, Perryman offers a new opinion that the initial installation and all actions by JWLI thereafter "show a continuing pattern and practice of disregarding the express regulations applicable to electrical work in Oklahoma." (Doc. 124 at 9, quoting Perryman's affidavit at 8). Although Perryman's report disclosed opinions that JWLI had performed electrical work in violation of regulations and the NEC, that "pattern and practice" opinion was not disclosed in his report. Hence, Perryman will not be permitted to state that opinion at trial, as there is no justification for failing to previously disclose such a sweeping opinion, and the Court finds that admission of the opinion would not be harmless. Fed. R. Civ. P. 37(c)(1).

Perryman should not be permitted to testify as to an alleged "pattern and practice" of violations by JWLI, as such testimony also presents a very real danger of confusing the jury. *See* Fed. R. Evid. 403. The Court has determined that (1) Perryman's specific criticisms of the initial installation work will not be admitted, because it is undisputed that the initial installation work did not cause the fire, and (2) Perryman's opinion that JWLI violated licensing requirements is irrelevant because such violations did not cause the fire. Similarly, Perryman has not reliably or

---

[5] Whether or not JWLI had received a waiver of applicable rules from the City of Tulsa also appears irrelevant, and would be excluded on that basis under Fed. R. Evid. 402 and 403. The Court has already determined that Perryman's opinion that JWLI violated those rules is irrelevant, because Perryman has not presented any reliable basis for indicating that any of the licensing rules violations caused the fire.

logically tied any "pattern and practice" of violations to the cause of the fire, such that the opinion is also excludable under Fed. R. Evid. 402 and 403, as well as *Daubert*.

In its response brief, Great Northern provided a detailed chart comparing the opinions expressed in Perryman's Rule 26 report with the statements in his affidavit that was submitted in response to JWLI's original motion in limine and motion for summary judgment. (*See* Doc. 127 at 10-16). There is a substantial overlap and consistency between the original report and the affidavit, but the Court acknowledges JWLI's concern that Great Northern's submission of Perryman's affidavit was an attempt to belatedly bolster the opinions and rationale he had ample opportunity to disclose at the time of his report and subsequent deposition. Accordingly, Great Northern and Mr. Perryman are cautioned that, consistent with Fed. R. Civ. P. 37(c)(1), Perryman will not be permitted to testify as to any opinion or discrete facts that were not disclosed in his Rule 26 report or discussed in his deposition testimony.

**C.     Conclusion**

JWLI's Motion in Limine to Exclude the Testimony of Plaintiff's Expert Tony Perryman (Doc. 91) is **granted in part and denied in part**, as set forth in Section A of this Opinion and Order. JWLI's Motion to Strike Plaintiff's Expert Tony Perryman (Doc. 124) is **granted in part and denied in part** as set forth in Section B.

SO ORDERED this 17th day of March, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE